IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DUSTIN NEIL SAKSA,<br><br>Defendant. | CR 26-41-BLG-KSL<br><br>MEMORANDUM OPINION AND ORDER |

The government alleges that Defendant Dustin Neil Saksa unlawfully possessed a firearm in violation of 18 U.S.C. §922(g)(1). (Doc. 3). The government also seeks forfeiture of that firearm. *Id.* Saksa now moves to exclude under Federal Rules of Evidence 404(b) and 403 any introduction of references to (1) prior sightings with alleged firearms, (2) an alleged shooting in December 2025, and (3) a probation search of Saksa's residence. (Doc. 19). Because some of this evidence involves incidents inextricably intertwined with the government's allegations and survives both Rule 404(b) and Rule 403, the Court will not categorically exclude all of this evidence, though it excludes on narrow category of reputation testimony discussed below.

## I. Background

On December 26, 2025, the Yellowstone County Sheriff's Office responded to a weapons complaint in Lockwood, Montana. (Doc. 24 at 2). The complainant, one of Saksa's neighbors, advised that Saksa had been harassing him and was known to possess a gun. (*Id.*) But the neighbor did not see any firearms. (*Id.*) On December 30, a federal probation search at Saksa's home revealed a .22 caliber magazine. (*Id.* at 4). On January 2, 2026, a confidential source claimed that Saksa shot a woman in the leg with a ".22 caliber hollow point" bullet. (*Id.* at 2-3). When police visited the woman at the hospital, they found a .22 caliber bullet was removed from her leg as the source described. (*Id.* at 3). The confidential source also stated that Saksa had been "tormenting" the neighborhood with a firearm for "over a week." (*Id.*) (quoting Doc. 25-3 at 6). This description was based on the observation that Saksa had been "shooting the gun off and threatening people non stop." (Doc. 25-3 at 6). The source later identified the firearm as a handgun. (*Id.*)

Based on this information, police executed a search warrant at Saksa's home on January 7, 2026, locating a .22 caliber pistol. (Doc. 24 at 4-5). Saksa now moves in limine to bar evidence of the alleged shooting, the probation search of his residence, and his alleged gun use in the community as noted by his neighbor and the confidential source under Federal Rules of Evidence 403 and 404(b). (Doc. 19-1 at 1, 6).

## II. Standard of Review

A motion in limine is a procedural mechanism designed to limit evidence in advance of its use, and courts consider these evidentiary issues on a case-by-case basis, examining all the facts and circumstances. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009); *R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.*, 945 F.2d 269, 272 (9th Cir. 1991). Because ruling on these motions is discretionary, district courts retain wide latitude when evaluating the admission of evidence. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384, (2008); *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995); *Goodson v. Arizona Dep't of Corr.*, 892 F.2d 1046 (9th Cir. 1989) (unpublished table decision).

## III. Analysis

The parties dispute whether the evidence is inextricably intertwined with the charges, or in the alternative, if the evidence is admissible under Rule 404(b). The parties also dispute whether Rule 403 independently bars the evidence's admission. The Court addresses each dispute in turn, because either the intertwinement or Rule 404(b) analysis independently supports admission if the evidence survives it, and Rule 403 provides a separate check on that conclusion.

### A. The alleged shooting, probation search, and confidential source's observations are inextricably intertwined with the crime.

At the outset, the government argues that Rule 404(b) is inapplicable because the circumstances and events leading up to the search are "inextricably intertwined"

with the crime. (Doc. 24 at 8). As the government explains, the alleged shooting and complaint about Saksa's weapons use were the basis for the probation search. (*Id.* at 12). That probation search revealed, among other things, firearm accessories, which resulted in the search warrant that uncovered the firearm. (*Id.* at 12-13). In other words, what happened before the discovery of the firearm is necessary to explain the discovery itself. (*Id.*) And—as the government asserts—these events serve as "circumstantial proof of [Saksa's] ongoing possession of a firearm." (*Id.* at 10). In response, Saksa argues that the evidence is "circumstantial" and involves "separate incidents, separate alleged crimes, and separate times and places of the instant offense." (Doc. 19-1 at 5). According to Saksa, introduction of this evidence is the government's attempt to "dirty the case." (Doc. 19-1 at 5). By this, of course, the Court presumes that Saksa is not accusing the government of prosecutorial misconduct, but rather arguing that the evidence constitutes impermissible propensity evidence and unfairly prejudices him.

Rule 404(b) is inapplicable if the challenged evidence is inextricably intertwined with the crime. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). Evidence is inextricably intertwined when it is so interwoven with the crime that it should not be treated as another crime or act for 404(b) purposes. *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016). The inextricably intertwined exception applies either when the conduct is part of the same transaction in a single

criminal episode or is necessary for the prosecutor to tell a comprehensible story of the crime charged or evidence obtained. *Vizcarra-Martinez*, 66 F.3d at 1012-13.

Because both justifications are potentially applicable here, the Court considers each in turn, beginning with whether the evidence is necessary to tell the story of the crime.

**1. The alleged shooting, probation search, and confidential source's observations are necessary to tell the story of the crime.**

The inextricably intertwined exception most commonly applies to felon in possession charges. *Vizcarra-Martinez*, 66 F.3d at 1013. The government must show "a sufficient contextual or substantive connection between the proffered evidence and the alleged crime." *Id.* at 1013. For example, in *United States v. Daly*, evidence that the defendant was engaged in a shootout was admitted to prove possession of a firearm. 974 F.2d 1215, 1217 (9th Cir. 1992). The shootout put the gun possession in the proper context and rebutted the defendant's claim of self-defense, and the court concluded that the jury was entitled to know the circumstances and background of the charge. *Id.* In *United States v. Dorsey*, evidence that the defendant was seen with a gun similar to one used in a shooting was inextricably intertwined with the charged crimes of witness tampering and discharging a firearm. 677 F.3d 944, 951-52 (9th Cir. 2012). The evidence bore directly on the crime charged because it showed that the defendant had the same type of gun as the one used in the shooting. *Id.* at 952. Because it added to the circumstantial case against the defendant, it formed part of

the comprehensive story of the crime. *Id.* In *United States v. Kelly*, evidence that the defendant abused a victim was admitted in a trial related to prostitution because "[t]he prosecution ha[d] the right to produce the entire story, no matter how sordid, so long as the bounds of relevancy [were] observed." 459 F.2d 10, 11 (9th Cir. 1972).

As in *Kelly*, the government here has the right to tell the whole story, and the events leading to the discovery of the firearm are part of that story. The alleged shooting and the probation search of Saksa's residence "add[] to the circumstantial case" against Saksa, specifically that Saksa possessed the discovered firearm. *Dorsey*, 677 F.3d at 952. A confidential source observed a woman leaving Saksa's residence, and this same woman had a bullet in her leg that matched the caliber of the firearm discovered in Saksa's residence. In addition, the probation search uncovered firearm accessories at Saksa's residence, including a magazine that is compatible with the discovered firearm. This evidence is probative of whether Saksa possessed the firearm during the relevant time period. This evidence also helps explain why law enforcement searched his home and discovered a firearm that the government believes was in Saksa's possession. *Daly*, 974 F.2d at 1217. Because the evidence here shows a "substantive connection" between the firearm and Saksa and provides important context for the investigation, the shooting investigation and probation search are inextricably intertwined with the felon in possession charge and not subject to Rule 404(b).

The alleged gun use in the community presents a closer call. This evidence stems from two sources: the neighbor who called in about Saksa harassing him and the confidential source's observations that Saksa had been "tormenting" the neighborhood by shooting off a firearm. (Doc. 24 at 2-3). While the neighbor initially believed that Saksa had been carrying a firearm, he later denied actually seeing Saksa with a firearm. (Doc. 25-1 at 1). This distinguishes the neighbor's observations from the ones made in *Dorsey*, where the defendant was observed with a specific gun—one that was the same or similar to the gun used in the shooting. *Dorsey*, 677 F.3d at 952. The neighbor's characterization of the events rests on his impression of Saksa rather than a specific act. In comparison, the confidential source appears to have observed Saksa with a firearm. The source noted that Saksa had been "shooting the gun off" and later identified the gun as a handgun. (Doc. 25-3 at 6). This testimony not only explains why law enforcement was originally called to Saksa's residence, *Daly*, 974 F.2d at 1217, but also shows that Saksa was observed with a firearm at some point during the relevant time period, *Dorsey*, 677 F.3d at 952. The Court concludes that the confidential source's testimony is inextricably intertwined with the firearm charge, but the neighbor's testimony about Saksa's reputation is not and will be subject to a Rule 404(b) analysis below.

**2. The alleged shooting, probation search, and confidential source's observations are part of the same criminal transaction.**

Another way the government can show the evidence is inextricably intertwined with the crime is by showing the evidence is part of the same scheme as the underlying criminal conduct. In *United States v. Rrapi*, evidence of uncharged past burglaries was admitted in the current case because evidence of those crimes was obtained in or led to the investigation which resulted in the present charges. 175 F.3d 742, 749 (9th Cir. 1999). In *Loftis*, the defendant was charged with several counts of wire fraud. 843 F.3d at 1175. The government sought to provide evidence of victims not specifically named in the indictment. *Id.* Because these victims were part of the overall scheme, the evidence was admissible as inextricably intertwined with the crime. *Id.* at 1178.

Here, the indictment alleges gun possession between December 30, 2025, and January 7, 2026. (Doc. 3 at 1-2). The observation about Saksa shooting off guns and tormenting his neighbors, the alleged shooting, and the probation search that Saksa moves to exclude either happened in this period or shortly before, and these events are relevant to ongoing possession of a firearm during that period. In addition, as explained above, the evidence here led to the investigation which resulted in the current charges. *See Rrapi*, 175 F.3d at 749. The observations by the confidential source, the alleged shooting, and the subsequent search that Saksa seeks to exclude all form part of the factual basis for the warrant which resulted in the discovery of

the gun. And the observation of Saksa shooting a handgun, the .22 caliber bullet found in the victim's leg, and probation search of Saksa's residence that revealed firearms accessories each go to the question of whether Saksa possessed a firearm during the relevant period, which is an essential element of the crime charged. *Loftis*, 843 F.3d at 1176. Because this evidence is part of the same criminal conduct as the charged offense, it is not subject to 404(b).

The neighbor's statement about Saksa being known to carry a gun does not tie Saksa's alleged conduct (possessing a firearm) to the relevant period. Although the statement occurred shortly before the charging period, it is a characterization about his general reputation, not a description of a specific act or event. *Cf. Loftis*, 843 F.3d at 1176 (describing discrete acts); *Vizcarra-Martinez*, 66 F.3d at 1013 (same). Unlike the observation of Saksa shooting a handgun, the alleged shooting, and the probation search, which are all specific events that are interwoven with the felon in possession charge, the neighbor's statement about Saksa's reputation is not part of the same criminal transaction.

**B. The alleged shooting, probation search, and confidential source's observations are not barred by 404(b).**

Although the Court finds that the confidential source's observations of Saksa shooting off a firearm, the alleged shooting, and the probation search fall within the inextricably intertwined exception, the Court—in the alternative—finds that they are

admissible under 404(b). But the testimony about Saksa being known to carry a gun does not overcome Rule 404(b).

Rule 404(b) bars evidence of other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." Fed. R. Evid. 404(b)(1). The evidence can be used for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Absent a proper proposed use, the evidence must be excluded. *United States v. Tydingco*, No. 20-10210, 2022 WL 445527, at *1 (9th Cir. Feb. 14, 2022). Under Ninth Circuit precedent, courts should only admit evidence under 404(b) if it (1) proves a material element of the charged offense; (2) would tend to make the existence of the defendant's knowledge more probable; (3) is based on sufficient evidence; and (4) is not too remote in time. *United States v. Hardrick*, 766 F.3d 1051, 1055 (9th Cir. 2014). The Court will address each in turn.

**1. The alleged shooting, probation search, and confidential source's observations help prove a material element.**

The parties first dispute whether the evidence tends to prove a material point. The government argues that the challenged evidence supports the government's assertion that Saksa knowingly possessed a weapon during the relevant period, an element of the offense charged. (Doc. 24 at 13-14); *United States v. Benamor*, 937 F.3d 1182, 1186 (9th Cir. 2019). Saksa counters that the evidence is not material because

he is not charged with any crimes related to the evidence and the government can prove its case without its use. (Doc. 19-1 at 5-6). But evidence of uncharged conduct can still be admissible. *See e.g. United States v. Spivey*, 7 Fed. App'x 595, 596 (9th Cir. 2001); *Rrapi*, 175 F.3d at 749. And evidence only needs to tend to prove a material point, not be necessary to do so. *United States v. Muhammad*, 740 Fed. App'x. at 887, 892 (9th Cir. 2018).

Evidence of firearm use tends to prove gun possession. *See e.g. Daly*, 974 F.2d at 1217. Like the shootout in *Daly*, the observations of Saksa shooting off a handgun, the alleged shooting, and the probation search make it more likely that the defendant possessed a firearm. "The [shooting is] relevant to the issue of possession." *Id.* The fact that Saksa was seen shooting off a handgun in his neighborhood tends to show that he had control over a firearm at some point during the relevant period. Likewise, the bullet found in the victim's leg matched the caliber of the firearm found in Saksa's residence has the tendency to show ongoing possession and use of the firearm. Moreover, the .22 caliber magazine found during the probation search was compatible with the caliber of the firearm later discovered in Saksa's residence and is at least probative of possession, which is a material element.

Unlike the alleged shooting and probation search, Rule 404(b) precludes reputation testimony about Saksa being known to carry a gun. General character evidence like that is the exact type of testimony that 404(b) bars. *United States v. Curtin*,

489 F.3d 935, 943 (9th Cir. 2007). The government asserts that Saksa "threatened his neighbor with a firearm," but the factual background provided by the government in its brief and exhibits do not establish that Saksa threatened the neighbor with a firearm. Rather, the neighbor said Saksa was walking around with a firearm, but the neighbor later admitted that he did not actually see the gun. (Doc. 24 at 2; Doc. 25-1 at 1). Because the neighbor's testimony is based on Saksa's general reputation rather than specific observations about his possession of a firearm, Rule 404(b) precludes this evidence absent an exception. The government does not identify—nor does the Court find—that any exception applies. Because this evidence fails the first prong of the Rule 404(b) analysis, the Court need not consider the other prongs with respect to the testimony by the neighbor about Saksa being known to carry firearms.

**2. The alleged shooting, probation search, and confidential source's observations make Saksa's knowledge more probable.**

Because the government asserts this evidence goes to Saksa's knowledge, the evidence must make it more probable that Saksa had knowledge that he possessed a firearm. (Doc. 24 at 13); *Hardrick*, 766 F.3d at 1055. Here, the confidential source's observations, the alleged shooting evidence, and the evidence from the probation search each make it more probable that Saksa had the requisite knowledge. As explained above, observations of Saksa shooting off a gun and evidence of a compatible magazine make it more likely he consciously possessed a firearm. Similarly, a recovered bullet that matches the caliber of the firearm is probative of whether Saksa

actually used the firearm as opposed to him not knowing of the firearm's presence in his residence. And these events could be linked to the firearm later found at Saksa's residence. Because each of these goes to Saksa's knowledge of the firearm, this factor is satisfied.

#### 3. The alleged shooting, probation search, and confidential source's observations have sufficient support to warrant admission.

The events leading up to the search on January 7 are supported by enough evidence to merit admission. Sufficiency of the evidence is a "low threshold." *United States v. Boam*, No. 21-30272, 2023 WL 3722904, at *2 (9th Cir. May 30, 2023). Testimony of a single witness is enough to establish sufficiency. *Id.* For example, in *United States v. Wellington*, evidence of past abuse was sufficiently supported because one witness corroborated it. No. CR 24-150-BLG-SPW, 2025 WL 2650595, at *2 n.3 (D. Mont. Sept. 16, 2025). Notably, Saksa does not challenge sufficiency anywhere in his brief. *See generally* (Doc. 19-1). Here, like the evidence in *Wellington*, Saksa's alleged conduct leading up to the discovery of the firearm can be supported by eyewitness testimony. The probation officer can testify to the probation search, and law enforcement can testify about the other two incidents. Although the statements made by the confidential source may face other evidentiary hurdles, the observations could be corroborated by testimony. Therefore, the sufficiency prong is satisfied.

**4. The alleged shooting, probation search, and confidential source's observations are not too remote in time.**

As Saksa concedes, the evidence is also not too remote in time. (Doc. 19-1 at 6). The relevant timespan is the time between the conduct sought to be admitted and the conduct which resulted in the charged offense. *Boam*, 2023 WL 3722904, at *2. The Ninth Circuit has held that a period of less than two years "falls well within durations [it has] approved." *United States v. Ruiz*, 167 F.4th 1024, 1032 (9th Cir. 2026). Here, the government asserts that Saksa possessed a gun between December 30, 2025, and January 7, 2026. (Doc. 3). The observations of Saksa shooting off a handgun and tormenting his neighbors, the alleged shooting, and the probation search that Saksa seeks to exclude occurred either in that timeframe or shortly before. Because this evidence occurred contemporaneously with the charged conduct, this evidence is not too remote in time. Accordingly, evidence of these three events meets all four elements of the Ninth Circuit's test for admission under Rule 404(b).

**C. Rule 403 does not bar admission of the alleged shooting, probation search, and confidential source's observations.**

Regardless of the Rule 404 outcome, Saksa also moves to exclude the evidence under Rule 403. (Doc. 19-1 at 6). Rule 403 requires exclusion when the evidence's probative value is "substantially outweighed" by unfair prejudice, confusion, delay, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

District courts have broad discretion in Rule 403 determinations. *United States v. Purry*, 702 Fed. App'x 511, 516 (9th Cir. 2017).

Saksa argues that admission of the events leading up to the January 7 search would be prejudicial. (Doc. 19-1, at 6-7). He argues that the probative value is small because he is not on trial for the allegations that form the basis for the motion, but he does not explain precisely why the evidence is prejudicial. *Id.* at 7. In response, the government asserts that Saksa will claim lack of knowledge concerning the fire-arm and the evidence is relevant to rebut an asserted lack of knowledge. (Doc. 24 at 16). The government also argues that limiting instructions can cure whatever preju-dice admission causes. *Id.*; *see also United States v. Lischewski*, 860 Fed. App'x 512, 516 (9th Cir. 2021) (finding that limiting instructions can cure prejudice).

**1. The probation search evidence passes 403 scrutiny.**

The probation search is probative of possession of a firearm. The fact that authorities found firearm accessories in Saksa's residence that matched the caliber of the firearm they later found has a tendency to show that Saksa had possession of a firearm during the relevant period. Moreover, the probative value of this evidence is amplified by the unavailability of other evidence on this point. At the time of Saksa's arrest, the firearm was discovered under the couch of his residence. The government must show possession through circumstantial evidence like the evidence uncovered during the probation search. Meanwhile, the fact that firearm accessories

were discovered during a probation search is not particularly inflammatory but instead provides circumstantial evidence of possession. Here, Saksa provides no explanation for precisely how this evidence prejudices him. The Court concludes that the probative value of this evidence outweighs the danger of unfair prejudice and thus satisfies Rule 403.

**2. The alleged shooting evidence passes 403 scrutiny.**

The alleged shooting is also highly probative to whether the defendant possessed a gun during the relevant period because the bullet found in the victim's leg matched the caliber of the firearm found in Saksa's residence. Although the alleged shooting is potentially more prejudicial than the probation search because a jury could conflate the uncharged shooting with the charged offense, a limiting instruction informing the jury that this evidence bears on possession, not guilt of the shooting itself, can address that risk. At this point, without knowing exactly what evidence the government will seek to admit, how it will introduce the evidence, or what specific prejudice Saksa will claim, the Court will not categorically bar evidence of the alleged shooting under Rule 403. Should the evidence be introduced in a manner that heightens the risk of prejudice beyond what a limiting instruction can address, Saksa may renew his objection at trial.

### 3. The confidential source's statements pass 403 scrutiny.

The confidential source's statements are highly probative to whether Saksa possessed a gun because there are clear indications that the source saw him do so. The source stated that the defendant was discharging a firearm and identified the gun as a handgun. The statements were later corroborated when a handgun was found at Saksa's house. The fact that someone allegedly saw Saksa with a gun is highly probative of whether he possessed one. Although the evidence that he was shooting off a firearm and thereby tormenting the neighborhood could be prejudicial to Saksa, the general prejudicial effect of the jury hearing that Saksa had been discharging firearms in his neighborhood does not "substantially outweigh" the probative value of showing that he possessed a firearm during the relevant period. Saksa provides no further explanation for how this evidence will prejudice him. Like the probation search and alleged shooting, the Court will not categorically exclude the confidential source's observations under Rule 403 at this juncture. This ruling addresses only the Rule 404(b) and Rule 403 arguments made in Saksa's motion; it does not resolve whether the confidential source's statements are otherwise admissible, including under the rules against hearsay or the Confrontation Clause, which the parties may raise at trial as appropriate.

## IV. Conclusion

Because the confidential source's observations, the alleged shooting evidence, and the probation search evidence each are inextricably intertwined with the felon in possession charge and satisfy both Rule 403 and Rule 404, the Court denies the motion to categorically exclude this evidence on the bases raised in Saksa's motion; however, the Court grants the motion to exclude testimony about Saksa's reputation for carrying a gun. The motion in limine is **DENIED IN PART AND GRANTED IN PART.**

IT IS SO ORDERED.

DATED this 8th day of September, 2026.

Kathleen Lane

KATHLEEN S. LANE
United States District Judge